**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES R. NIEDERSTADT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No.   4:02CV00847 ERW |
| | ) | |
| JIM PURKETT, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the Report and Recommendation ("R&R") [doc. # 7] and Supplemental Report and Recommendation ("Supplemental R&R") [doc. # 17] of United States Magistrate Judge Mary Ann L. Medler pursuant to 28 U.S.C. § 636(b). The Court notes that Petitioner filed objections to both the R&R and the Supplemental R&R claiming that the Magistrate Judge did not address whether his due process rights had been violated because Mo. Rev. Stat. § 566.060 (Supp. 1991) was interpreted by the Missouri Supreme Court in such a way that the statute as enforced is "vague, overbroad, and subject to arbitrary enforcement." More precisely, Petitioner claims he is entitled to relief based upon a violation of the Fifth Amendment to the United States Constitution, as made applicable to individual states under the Fourteenth Amendment, because he was denied due process of law when the Missouri Supreme Court expanded the scope of criminal conduct encompassed by a statute and retroactively applied the interpretation to Petitioner's detriment. He argues that the retroactive application of this statute was unforeseen when he perfected his direct appeal to the Missouri Supreme Court.

# I. FACTUAL BACKGROUND

The facts of this case are thoroughly discussed in the Supplemental R&R. However, for clarity, the Court will briefly restate the facts[1] necessary for this Court's determination of the merits of Petitioner's argument in completing its independent findings and analysis.

> The victim, S.C.,[2] was a sixteen-year-old female at the time of the alleged sodomy in 1992. She was the daughter of American missionaries serving in Gambia, West Africa. In 1991, S.C. was sent by her parents to Malden, Missouri, to attend high school and to live with defendant and his family. Prior to coming to defendant's home, she had no sexual experience. In July and August of 1991, defendant began engaging in inappropriate kissing on the lips and fondling of the girl's breasts and touching her between her legs.

> At the religious school she attended, she began getting into trouble. The school administered detention as punishment. Defendant's punishment was to administer whippings to the girl's buttocks, back, and legs. He contended the girl was "rebellious and needed it." The beatings were so severe that S.C. suffered bruising, making it painful for her to walk and difficult for her to participate in physical education classes. The beatings occurred about once per month during her stay in the Niederstadt home. Sometimes on the morning after a beating, the defendant would come into S.C.'s room, take off her clothes and underwear, and count her bruises out loud. Following one such beating, defendant attempted to strangle S.C., squeezing her neck and repeatedly saying, "I could kill you right now." He eventually released her. Because of the beatings and threats, on one occasion S.C. attempted to run away from the defendant's home but returned the same day. S.C. stated she was afraid to report the sexual misconduct to authorities.

> Like the beatings, the fondling incidents continued throughout the school year, usually occurring in the early morning. Defendant would come into the girl's room and place his hand under her clothes and underwear. While he touched her, he would masturbate.

> The information alleged that the deviate sexual intercourse occurred in March of 1992. The victim testified to several such incidents but only gave details as to one in March of 1992. S.C. testified that she had been feeling sick and went to sleep in her

---

[1]The Court adopts the facts found by the Missouri Supreme Court. As the Magistrate Judge pointed out, in proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." *Hall v. Luebbers*, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). In this case, it does not appear that Petitioner disputes the factual findings in the Missouri Supreme Court's opinion.

[2] The initials of the victim are substituted in this Order for the full name included in the Information.

room. She was awakened by a sharp pain which she discovered was caused by defendant's finger in her vagina. When she awoke, defendant told S.C. he was "checking [her] temperature." Defendant admitted to that incident. S.C. testified that later in March there were other occasions when defendant penetrated her vagina with his finger.

*State v. Niederstadt*, 66 S.W.3d 12, 14 (Mo. 2002).

## II. PROCEDURAL HISTORY

Petitioner was charged by information, filed July 22, 1998, with forcible sodomy,[3] in violation of Mo. Rev. Stat. § 566.060. The Information alleged that during March 1992, Petitioner had deviate sexual intercourse with S.C., to whom he was not married, without her consent, by the use of forcible compulsion. Petitioner waived a trial by jury. On February 24, 2000, the trial court found Petitioner guilty of forcible sodomy. On April 13, 2000, the trial court sentenced Petitioner to 25 years in the Missouri Department of Corrections. *See* Resp. Ex. B at 11. On direct appeal, the Missouri Court of Appeals for the Southern District reversed the Judgment of the circuit court. The State filed an application for transfer to the Missouri Supreme Court. The Supreme Court affirmed the circuit court's decision. In its decision, the Supreme Court began by defining "sodomy," which included the elements of "deviate sexual intercourse," and "forcible compulsion."

The Missouri Supreme Court concluded that Petitioner had "committed an act of deviate sexual intercourse on a sixteen-year-old girl who lived in his home." *State v. Niederstadt*, 66 S.W.3d at 14-15. The Petitioner does not argue with this finding. He argues only that the Court's conclusion that Petitioner committed this deviate sexual act by use of forcible compulsion was not supported by the facts, and that the Court's interpretation of "physical force that overcomes reasonable resistance" unforeseeably expanded the statute to include his actions, when it had not been interpreted in that manner in the past. Petitioner presents for resolution the issue

---

[3]Although the parties refer to the charge as "forcible sodomy," the statute is simply titled "Sodomy." Mo. Rev. Stat. § 566.060 (Supp. 1991). Any reference by the Court to "forcible sodomy" shall be understood to refer to this sodomy statute.

of whether the Missouri Supreme Court, by its application of the law to the facts of his case, changed the law so that there was retroactive application which deprived him of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

### III. PROCEDURAL DEFAULT

Pursuant to 28 U.S.C. § 2254, a habeas petitioner must exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1)(A). Respondent admits in his Response to Order to Show Cause that "Petitioner has exhausted his available state remedies as he has either afforded the state courts a full and fair opportunity to review the claim, or there is not a non-futile state remedy in which he can now present the claim." *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). However, in order to avoid procedural default, the petitioner must have "fairly presented" the substance of his claim to the state court so as to give that court the "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). *See also Wemark v. Iowa*, 322 F.3d 1018, 1020-21 (8th Cir. 2003). In Missouri, a claim must be raised at the earliest opportunity. *See State v. Galazin*, 58 S.W.3d 500, 505 (Mo. 2001). The claim must also be presented at each step of the judicial process in state courts to avoid procedural default. *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994). A state prisoner who fails to follow the applicable state procedural rules for raising his claims "is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997). In order to "fairly present" a claim in state court, the petitioner must "'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Abdullah v. Groose*, 75 F.3d 408, 411-12 (8th Cir. 1996) (quoting *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993)). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas

petition." *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996). *See also Wemark*, 322 F.3d at 1021 (quoting *Joubert*, 75 F.3d at 1240). Presenting a claim which is "merely similar" to the claim raised in the habeas petition is insufficient to satisfy this requirement. *Abdullah*, 75 F.3d at 412.

Even if a federal claim has been "fairly presented" to the state court, a federal court generally will decline to consider a claim if the state court denied it on "independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). *See also Fann v. Bowersox*, 247 F.3d 841 (8th Cir. 2001) (federal court will not review question of federal law decided by state court if that decision rests on independent and adequate state grounds).

Once a claim has been procedurally defaulted, a federal court may not consider it unless petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. *See also Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (bar to procedurally defaulted claim is absolute unless there is a showing of cause and actual prejudice, or actual innocence). To show cause excusing procedural default, a petitioner must show that some external factor beyond his, her, or an attorney's control caused the procedural default. *Turner v. Delo*, 69 F.3d 895, 896-97 (8th Cir. 1995). A petitioner asserting prejudice must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). *See also Swedzinski v. U.S.*, 160 F.3d 498, 501 (8th Cir. 1998) (quoting *Frady*, 456 U.S. at 170). Finally, a petitioner wishing to excuse his procedural default on the "fundamental miscarriage of justice" prong must demonstrate actual innocence. *Sweet*, 125 F.3d at 1152.

This Court holds that Petitioner's claim is not procedurally defaulted. A claim is not considered defaulted so long as it is raised at the earliest possible time and raised at every

opportunity during the judicial process. *See Galazin*, 58 S.W.3d at 505 and *Jolly,* 28 F.3d at 53. Petitioner raised his due process claim as soon as it became relevant to his case.

In *Bouie v. City of Columbia*, the Supreme Court evaluated a due process claim in a case with procedural history quite similar to the case at bar. 378 U.S. 347 (1964). In that case, Defendants were two African-Americans who entered a store where merchandise was available to all members of the public, except the restaurant area which was reserved for white customers only. They seated themselves in the restaurant area where they patiently awaited service which was not extended. A store employee then put-up a chain bearing a "no trespassing" sign. A policeman arrived when they refused to leave, and they were arrested for charges including criminal trespass for which they were convicted. The South Carolina Supreme Court affirmed their convictions construing "the statute to cover . . . the act of remaining on the premises of another after receiving notice to leave." *Id*. at 350. Under that statute, the prohibited conduct was entry upon land of another after notice. Remaining on the premises after receiving notice to leave was not proscribed by the statute, and the plain language of the statute had never been interpreted in such a way as to proscribe that conduct.

The South Carolina Supreme Court's new construction of the statute was first announced at the state supreme court level. Upon review, the United States Supreme Court held that a sufficiency of the evidence argument, as raised in earlier appeals in the case, no longer applied. *Id*. Because the statute was now being interpreted in a new and broader way, the evidence was indeed sufficient. However, because the way the South Carolina Supreme Court construed the statute changed in such a way as to retroactively encompass the defendants' actions, the appropriate defense was now that the new interpretation was in violation of defendants' right to due process. *Id.*

This Court finds almost identical procedural history in this case. Here, the state trial court did not issue a written opinion with findings of fact and conclusions of law; instead, the court

issued a Docket Text Order simply finding Petitioner guilty of the crimes charged. Petitioner recognized that the forcible sodomy law, and cases interpreting that law, required a finding of physical force, a force distinct from the deviate sexual act itself. For this reason, he appealed raising a sufficiency of the evidence argument. There is no indication in the record that the trial court interpreted the statute to mean that the requisite physical force could be the same action as the deviate sexual act. It is impractical to believe that Petitioner's due process argument could have been raised when Petitioner filed his original appeal.[4] The statute was not enforced in such a fashion that the physical force did not need to be distinct from the deviate sex act, until it reached the Missouri Supreme Court. Until that time, a "sufficiency of the evidence" argument was appropriate. Only after the statute was interpreted in a way different from the plain language of the statute and prior interpretations of the statute[5] did a due process argument become ripe. Petitioner raised this argument at the earliest possible time, in his Motion for Rehearing before the Missouri Supreme Court.[6] Since that time, Petitioner has raised the identical due process argument at every opportunity. Thus, this Court holds that Petitioner's due process claim was not procedurally defaulted.[7]

---

[4]Furthermore, as Petitioner astutely recognizes, appellate court judges are not receptive when parties raise trial court errors that do not appear in the record.

[5]See Review of Merits, *supra*.

[6]The Court notes that the Missouri Supreme Court denied Petitioner's Motion for Rehearing summarily. It did not provide any independent and adequate state grounds for denying Petitioner's due process claim.

[7]However, assuming *arguendo* that Petitioner's claim was procedurally defaulted, he has produced clear and convincing evidence that, absent the supreme court's unlawful broadening of the forcible sodomy statute, no reasonable court would have found Petitioner guilty of the crime under the existing facts. *See Sawyer v. Whitley*, 505 U.S. 333, 336 (1992) (holding that petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law"). This Court holds that, in this case, if the supreme court had not enforced the statute to allow the sex act to constitute the required physical force element, no reasonable court would have found Petitioner guilty of the crime of forcible sodomy.

# IV. AEDPA STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132,

110 Stat. 1214, made numerous changes to Title 28, Chapter 153 of the United States Code, 28

U.S.C. §§ 2241-2255, the chapter governing federal habeas petitions.  Specifically, in Section 104

of the AEDPA, Congress added new subsection (d) to 28 U.S.C. § 2254.  That subsection

provides as follows:

> (d)  An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court has made clear, § 2254(d)(1) "constrain[s] . . . the power of a

federal habeas court to grant a state prisoner's application for a writ of habeas corpus with

respect to claims adjudicated on the merits in state court."  *Williams v. Taylor*, 529 U.S. 362, 412

(2000).  Under this first prong of § 2254(d), the state court's decision must be contrary to clearly

established federal law, or it must involve an unreasonable application of federal law.  *Id.*  "Under

the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state

court decides a case differently than th[e Supreme] Court has on a set of materially

indistinguishable facts."  *Id.* at 412-13.  Moreover, pursuant to the "unreasonable application"

clause, "a federal habeas court may grant the writ if the state court identifies the correct governing

legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case."  *Id.* at 413.  "[A] federal court may grant relief when a state court

has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in

which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). Importantly, a court may not grant relief merely because it concludes that the state court applied established federal law incorrectly; instead, the application must also be unreasonable. *Id.* at 411. *See also Copeland v. Washington*, 232 F.3d 969, 973 (8th Cir. 2000) (discussing *Williams*, 529 U.S. 362).

An application for a writ of habeas corpus may also be granted if any claim adjudicated on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.* at § 2254(e)(1). *See Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (state court decision unreasonable only if showing made that factual findings do not enjoy support in the record); *Boyd v. Minnesota*, 274 F.3d 497, 500 (8th Cir. 2001) (factual determination of state court presumed correct).

The review mandated by the AEDPA applies to any claim "that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). As the Eighth Circuit recently noted, the determination as to whether a claim was adjudicated on the merits in state court requires a court to "look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court." *Brown v. Leubbers*, 371 F.3d 458, 461 (8th Cir. 2004). Other Circuits have determined that, in the event that the state court has not articulated its reasoning for denying a claim, the federal habeas court is obligated to conduct its own independent review of the record and applicable law to determine whether the decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of facts in light of the evidence presented. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir.

1999). Importantly, "[f]ederal courts are 'bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions' in habeas corpus cases." *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004).

## V. REVIEW OF MERITS

Petitioner was originally charged in a two count information which charged him (1) in Count I with forcible sodomy, an unclassified felony carrying a minimum punishment of 5 years and up to life in prison, on which he has been sentenced to 25 years in prison and (2) in Count II with Sexual Abuse in the First Degree, a Class D Felony under Mo. Rev. Stat. § 566.100. Count II was dismissed before the court tried case began.

### A.  *Violation of Due Process*

Petitioner argues that the Missouri Supreme Court applied the law in such a way that the "physical force" component of the forcible compulsion element was, in effect, reduced to being satisfied by Petitioner committing the deviate sexual act itself. The question to be answered by this Court is whether the supreme court interpreted the requirement of "forcible compulsion" (1) in contravention of the plain language of the statute and (2) differently than courts had interpreted the concept in previous decisions, such that Petitioner's right to due process was violated. A judicial modification of a law, under certain circumstances, "raises questions under the due process clause of the fourteenth amendment." *Hill v. Hopkins*, 245 F.3d 1038, 1039 (8th Cir. 2001). The "principle appealed to is a constitutional guarantee of fair warning that future conduct can give rise to a particular criminal sanction." *Id.* Laws must give notice of what is a prohibited activity. *Becker v. A.L. Lockhart*, 971 F.2d 172, 174 (8th Cir. 1992).

In *Bouie v. City of Columbia*, the Court granted relief, ruling that

[t]here can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language, but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language...  Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates

10

precisely like an *ex post facto* law, such as Art. 1 §10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action,' or 'that aggravates a crime, or makes it greater than it was, when committed..'"

*Bouie*, 378 U.S. at 353 (internal citation omitted). The Court then reported,

"[w]hen a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant in a pending case, it thereby deprives him of due process of law 'in its primary sense of an opportunity to be heard and to defend (his) substantive right.' When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively, to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime."

*Id.* at 354-55 (internal citation omitted).

In *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693 ( 2001), the United States Supreme Court examined the constitutionality of retroactive application of a rule of law which provided that "no defendant could be convicted of murder unless his victim had died by the defendant's act within a year and a day of the act." In that case, the defendant's victim lingered in a coma for fifteen months after receiving knife wounds before dying of kidney infection. That court recognized that "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Bouie*, 378 U.S. at 354 (citing Hall, General Principles of Criminal Law (2d ed. 1960)). The *Rogers* opinion reasoned that an unworkable and unacceptable restraint on normal judicial precesses would be incompatible with the resolution of uncertainty that marks any evolving legal process where "the allegedly impermissible judicial application of a rule of law involves not the interpretation of a statute but an act of common law judging . . ., there often arises a need to clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves. Such judicial acts, whether they be characterized as 'making' or 'finding' the law, are a necessary part of the judicial business in States in which the criminal law retains some

of its common law elements. Strict application of *ex post facto* principles in that context would unduly impair the incremental and reasoned development of precedent that is the foundation of the common law system . . ." *Id.* at 461.

Clearly, when a state court decision changes the law in a fashion that is foreseeable, there is no constitutional violation. *See Hill v. Hopkins*, 245 F.3d at 1040 (the court's judicial interpretation was a foreseeable extension of an existing legal principle); *Hagan v. Caspari,* 50 F.3d 542, 543, 546, 547 (8th Cir. 1995) (Missouri Supreme Court's reversal of lower court opinions was entirely foreseeable); *Becker*, 971 F.2d at 175 (no due process violation because courts had repeatedly applied the same definition of "immediately" to other similar fact situations); and *State v. Lewis,* 633 S.W. 2d 110 (Mo. Ct. App. 1982) (relied on by Movant in his double jeopardy argument, the Eighth Circuit reversed that ruling concluding that the "state supreme court's decision to overrule *Lewis* was entirely foreseeable.'). As noted in *Rogers,* judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue. *Rogers*, 532 U.S. at 462. Courts have looked to the plain language of the statute and prior interpretations of the statute to determine if a judicial interpretation of the statute was foreseeable. *See Moore v. Wyrick*, 766 F.2d 1253, 1255 (8th Cir. 1985); *Hagan v. Caspari*, 50 F.3d 542, 547 (8th Cir. 1995); and *Davis v. State of Nebraska,* 958 F.2d 831, 834-35 (8th Cir. 1992).

In *Davis v. State of Nebraska,* the Court granted habeas corpus relief, concluding that allowing the combining of elements of two prior convictions to make one predicate conviction under the habitual criminal statute could not have been foreseen, and thus, the state court's retroactive application of its interpretation to Davis violated the due process clause of the Fourteenth amendment. *Id*. at 834-35. Davis had unsuccessfully appealed his conviction as a habitual criminal to the Nebraska Supreme Court. The district court denied him habeas corpus

relief. The Eighth Circuit ruled, "the real issue here is whether a reasonable person could have foreseen an interpretation of § 29-2221(1) allowing the state to rely on the conviction and sentence in the 1973 case in combination with the commitment to prison in the 1972 case as one predicate conviction." *Id*. at 834. The Court concluded that interpretation was unforeseeable based on the plain language and prior interpretations of the statute. *Id.* at 834-35.

*B. Plain Language of the Statute*

"Sodomy,"[8] includes the elements of "deviate sexual intercourse,"[9] and "forcible compulsion."[10] Without some action or force on the part of the perpetrator, "deviate sexual intercourse" is impossible. Petitioner acted in a manner so his hand, in particular, his finger, was involved with the genitals, in particular the vagina, of S.C. All the elements of deviate sexual intercourse were present in March, 1992.

Petitioner, in his petition for relief, argues that"[t]here is an alternative charge that the state could have used to sustain a conviction under this evidence." He then cites to the class C felony described in Mo. Rev. Stat. § 566.070 (Supp. 1991). This offense carried a maximum punishment of seven years in the Missouri Department of Corrections and a fine of $5,000.00.

---

[8]At the time of this offense "Sodomy" was defined as, in relevant parts, in the Mo. Rev. Stat. § 566.060 (Supp. 1991):
> 1. A person commits the crime of sodomy if he has deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion.
> 2. Forcible sodomy or an attempt to commit forcible sodomy as described in subsection 1 of this section . . . is a felony for which the authorized term of imprisonment, including both prison and conditional terms, is life imprisonment or a term of years not less than five years . . ."

[9]At the time of the offense "Deviate Sexual Intercourse" was defined as, in Mo. Rev. Stat. § 566.010(1)(2) (Supp. 1991), meaning "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person."

[10]At the time of the offense "Forcible Compulsion" was defined as, in Mo. Rev. Stat. § 556.016(12) (Supp. 1991), meaning "either: (a) [p]hysical force that overcomes reasonable resistance; or (b) [a] threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another person."

Mo. Rev. Stat. § 566.070(1) (Supp. 1991). Deviate Sexual Assault in the First Degree, provides, "[a] person commits the crime of deviate sexual assault in the first degree if he has deviate sexual intercourse with another person to whom he is not married and who is incapacitated or who is fourteen or fifteen years old." Mo. Rev. Stat. § 566.070(1) (Supp. 1991). Although S.C. was sixteen at the time, the facts in the Missouri Supreme Court opinion support a finding of incapacitation during the deviate sexual act. "'Incapacitated' means that physical or mental condition, temporary or permanent, in which a person is unconscious, unable to appraise the nature of his conduct, or unable to communicate unwillingness to an act." Mo. Rev. Stat. § 556.061(13) (Supp. 1991). It is likely that a court would have held that Petitioner committed the offense of Deviate Sexual Assault in the First Degree, a Class C Felony which provided for a Maximum penalty of seven years in the Missouri Department of Corrections and a $5,000.00 fine. Mo. Rev. Stat. §§ 566.070(1) (Supp. 1991); 558.011(1)(3) (Supp. 1991); and 560.011(1)(1) (Supp. 1991).

There was another extant statute that clearly proscribed the conduct of Petitioner in March, 1992, which was a class D felony, carrying a maximum punishment of five years in the Missouri Department of Corrections and a maximum fine of $5,000.00. The crime of deviate sexual assault in the second degree was described in Mo. Rev. Stat. § 566.080(1) (Supp. 1991), and provided, "[a] person commits the crime of deviate sexual assault in the second degree if, being seventeen years old or more, he has deviate sexual intercourse with another person to whom he is not married who is sixteen years old." It is clear that in March, 1992, Petitioner committed the offense of Deviate Sexual Assault in the Second Degree, a Class D Felony which provided for a Maximum penalty of five years in the Missouri Department of Corrections and a $5,000.00 fine. Mo. Rev. Stat. §§ 566.080 (Supp. 1991); 558.011(1)(4) (Supp. 1991); and 560.011(1)(1) (Supp. 1991).

The only element of the crime of Sodomy as defined in Mo. Rev. Stat. § 566.060(1) (Supp. 1991) that distinguishes it from the crime of Deviate Sexual Assault In The Second Degree is that, under the sodomy statute, the deviate sexual intercourse must occur "by the use of forcible compulsion." If the "forcible compulsion" element is present, the punishment is racheted from a maximum of five years under the crime of Deviate Sexual Assault in the Second Degree to a minimum of five years and a maximum term of life imprisonment.

In the analysis of the case now before the Court, it is critical to examine the physical force applied, not to complete the sex act, but rather, the physical force required for the Court to find that the element "by forcible compulsion" is present. There is no doubt that Petitioner committed deviate sexual intercourse when he placed his finger in S.C.'s vagina. The very nature of the offense of deviate sexual intercourse requires that some amount of physical force[11] be applied by a perpetrator. In completing any sex act where there is contact between two individuals, there will be some amount of force "applied to the body" required to complete the sex act. Forcible compulsion cannot be the same action as the sex act itself; otherwise, the physical force element would be superfluous, adding no meaning to the statute. Indeed, there would be nothing to distinguish Sodomy from Deviate Sexual Assault in the Second Degree.

Under the precise terms of the statute, Petitioner was required to perform "deviate sexual intercourse" "by the use of forcible compulsion" before being in violation of the Sodomy statute. The forcible compulsion required for sodomy is "[p]hysical force that overcomes reasonable resistance." Mo. Rev. Stat. § 556.061(12)(a) (Supp. 1991). The plain language of the statute requires that some amount of physical force, in addition to the force necessary to complete the deviate sexual intercourse, be present to convict a defendant based on the sodomy statute. The only force applied to the body of S.C. by Petitioner was inserting his finger into her vagina while

---

[11] "Physical Force" is defined in *State of Missouri v. Kilmartin,* 904 S.W.2d 370, 373 (Mo. Ct. App. 1995) as "force applied to the body."

she was asleep.  Other than the force he used to insert his finger into her vagina when she was asleep, there is no record of any other force used by Petitioner.  Petitioner's act of inserting his finger into S.C.'s vagina was deviate sexual intercourse; however, other than the physical force used to perform this deviant sexual act, there is no indication that Petitioner used any other force or that any other force was required given that S.C. was asleep at the time.  Further, there is no indication in the record that the Petitioner performed any further sex act after S.C. awoke.

## C.  The Totality of the Circumstances Test and Prior Interpretations of the Statute

The next issue is whether the Missouri Supreme Court misapplied the "totality of the circumstances" test in concluding that Petitioner acted with forcible compulsion to overcome the reasonable resistance of S.C.  This Court has examined the trial transcript repeatedly in order to determine if the "totality of the circumstances test" was properly applied.  The Missouri Supreme Court, in its opinion, relied on *State of Missouri v. Spencer,* 50 S.W.3d 869 (Mo. Ct. App. 2001).  In that case, defendant was a psychologist who was treating M.M. for schizophrenia.  She was an eighteen-year-old female who had been hospitalized most of her life.  She reported auditory hallucinations.  Facts reported by the Court of Appeals for the Eastern District of Missouri appear from the opinion as follows:

> M.M. testified that defendant "would unbutton his pants and put my face against him" and "[h]e would put my head to his penis, told me to start."  M.M. would react by "gagging and pulling back."  At that point, defendant would become very angry and "push" M.M.' face back against his penis and she would continue to gag.  Defendant then yelled at her and told her to turn around and take off her pants.  Defendant then raped M.M.  M.M. told defendant she did not want to engage in any sexual activities but defendant ignored her.

M.M. continued to see the defendant as a condition of her probation and because if she terminated the visits, she would be "kicked-out" of the hospital and referred to a shelter.

The Court analyzed the "actual physical force" defendant exerted against the victim.  The defendant "put [M.M.'s] head to his penis" and "told [her] to start."  She reacted by "gagging and

pulling back." Defendant then would "push" M.M.'s face against him. Here, the defendant, while the victim was conscious, exerted physical force against the victim to accomplish the sexual act over her opposition. The facts in the *Spencer* case are quite unlike those in Petitioner's case. In the *Spencer* case, the court had already established that some amount of physical force was used against the victim. Only then did the court use the totality of the circumstances test to determine whether the **amount** of force was sufficient to overcome reasonable resistance of M.M. *Spencer* ruled, "[g]iven defendant applied force to M.M. . . ., **it is the 'totality of the circumstances [that] determines whether this was physical force which would overcome reasonable resistance**.'" *Spencer,* 50 S.W. 3d at 874 (emphasis added).

This test is applied to determine if the amount of force used against a victim by a perpetrator to complete a sex act against a victim under all of the circumstances of a particular case is sufficient to overcome the reasonable resistance of the victim. The totality of the circumstances, i.e. all the history between the perpetrator and the victim, the facts leading to the performance of the sex act and the sex act itself, cannot be substituted for the element of force where force to overcome reasonable resistance is missing in a prosecution. This test is a measure of force used, not a vehicle to declare the presence of force to overcome reasonable resistance when none otherwise exists. Where there is no physical force applied, the "totality of the circumstances" test does not come into play. In this case, there was no physical force exerted against S.C., which can be said to have been used to overcome her reasonable resistance. The sex act was completed before S.C. awoke.

The Missouri Supreme Court rightly found, "[h]ere, there is no question about the fact that defendant committed an act of deviate sexual intercourse on a sixteen-year-old girl who lived in his home." Indeed, that is not contested by Petitioner. Next, soundly relying on *State v. Kilmartin,* 904 S.W.2d 370 *(*Mo. Ct. App. 1995), the court defined physical force as simply 'force applied to the body.'" *Id*. at 374. Further relying on *Kilmartin*, the court held, without further

elaboration, that "[t]here is also no question but that defendant used physical force to insert his finger in the girl's vagina." *Niederstadt*, 66 S.W.3d at 15. As noted in the analysis above, there is no reference in the Missouri Supreme Court opinion to any physical force by Petitioner to overcome S.C.'s reasonable resistance to complete the act of sodomy. Deviate sexual intercourse was completed before S.C. awoke. Without any evidence of any physical force used, the Missouri Supreme Court applied the "totality of circumstances" test. The opinion reports, "[i]n determining if the force used is sufficient to overcome reasonable resistance, the court does not look to any single fact, but to the totality of the circumstances." *Id.* (citing *Kilmartin,* 904 S.W.2d at 374). The court then listed the factors to consider, among others, in the "totality of the circumstances test," including "whether violence or threats precede the sexual act; the relative ages of the victim and accused; the atmosphere and setting of the incident; the extent to which the accused was in a position of authority, domination, and control over the victim; and whether the victim was under duress." *Id.* (citing *Spencer* quoting *Kilmartin*). The court then reported the beatings, prior threats of sexual incidents, the age difference between Petitioner and S.C. (40 and 16 respectively), S.C's naivete in sexual matters, that the incidents occurred at Petitioner's home where S.C. was dependent on Petitioner for her subsistence, and her fear of reporting the incidents. All of these facts were present in Petitioner's case, and Petitioner makes no denial of them. Indeed, this Court agrees that, based on the totality of the circumstances, the amount of requisite force needed in this case, would be quite small; however, there must be some amount of physical force used before Section 566.060 of the Missouri Revised Statutes becomes applicable. Critically significant is that these factors, described in combination as the totality of the circumstances test, are irrelevant because they are only relevant in an analysis of whether "force used is sufficient to overcome reasonable resistance." Here, there was no physical force applied to the victim distinct from the sex act itself. These factors cannot be substituted for forcible compulsion where there was no "physical force" exerted by a perpetrator "that overcomes

reasonable resistance." Mo. Rev. Stat. § 556.061(12) (Supp. 1991). The "totality of the circumstances" test was unnecessarily applied in this case to supply an element of force that did not exist.

The Missouri Supreme Court found, "[t]he evidence here clearly shows that several acts of deviate sexual intercourse involving physical force were committed during the time period, March of 1992." *Niederstadt*, 66 S.W.3d at 14-15. For purposes of thoroughness, this Court will set forth all of the evidence in the record of any acts of deviate sexual intercourse allegedly performed by Petitioner against S.C. involving physical force in the March 1992 time frame. The Court has examined the trial transcript, registering all instances of sexual acts of Petitioner against S.C. during the March, 1992 time frame. While there are many acts of physical force applied by Petitioner against S.C. while she was a guest in his house, the Court has been unable to find any physical force applied in conjunction with any act of deviate sexual intercourse during this time period.

Petitioner was charged in a two count information. Count I, under which he was convicted, reads: The Defendant,

> in violation of Section 566.060, RSMo, committed the felony of forcible sodomy, punishable upon conviction under Section 566.060.2, by life imprisonment or a term of years not less than five years, in that on or about during March 1992, in the County of Dunklin, State of Missouri, the defendant had deviate sexual intercourse with [S.C.], to whom he was not married, without consent of [S.C.] by the use of forcible compulsion.

Mr. Sorrell, defense counsel, being very specific in protecting the record with his objections, stated "Judge, he is charged with certain conduct in March 1992, and she tied that up as being March of 1992. I had an objection as to other uncharged events. I want to make sure I understand which ones are charged and uncharged." Mr. Sokoloff asked S.C., "[d]uring the same time period was there a fondling in your bed room that continued on?" Mr. Sorrell objected, "[o]bjection, Judge, he is talking about during this same time period or –" Mr. Sokoloff

responded, "I am talking about March." Mr. Sokoloff then asked S.C., "[o]n occasions besides the one we were talking about when he came in and said he was taking your temperature, were there other occasions during that same month where he penetrated your vagina with his fingers?" S. C. answered, ["y]es." Mr. Sokoloff inquired further, "[a]nd how often did that start happening after this one occasion that you mentioned with the temperature taking?" S.C. responded, " [i]t happened-- I can't remember how often it happened, but it happened more." Mr. Sokoloff followed with, "[a]fter Mr. Niederstadt had administered those whippings, would he sometimes come into your room, come back into your room, I should say?" S.C. testified, "[s]ometimes he did sexual things to me after he whipped me." Mr. Sorrell objected, "[l]et me object, that is not responsive." Mr. Sokoloff rephrased the question, "[s]ometimes after he whipped you, did he come back into your room?" She answered, "[t]he next morning, yes." S.C. testified that he looked at her bruises. "He came into my room in the morning and would take my clothes, my underwear down, and count the bruises." (Trial tr. pp. 17-18).

S.C. then testified that she was afraid of him, "[b]ecause he tried to strangle me one time." She said, "[h]e was beating me for something, and I wasn't crying and he got mad and he put his hand around my neck and was squeezing my neck so hard his face went red, and he kept saying, I could kill you right now.'" (Trial tr. pp. 21-22).

There is no doubt that Petitioner physically abused S.C. However, to be criminally responsible under the information, Petitioner must have had deviate sexual intercourse with S.C. without her consent by use of forcible compulsion during March 1992. None of the acts of physical force by Petitioner occurred in conjunction with any offense for which Petitioner was charged or convicted. The allegations of S.C. are very general, both in terms of the time period and circumstances surrounding the events that occurred. There is no evidence in the record that Petitioner applied any physical force against S.C. at any time to overcome her reasonable resistance to commit deviate sexual intercourse. Certainly, had Petitioner committed deviate

sexual intercourse against S.C. after beating or threatening to beat her or after choking her, then any application of the totality of the circumstances test would be appropriate in showing an absence of resistance on her part.

The Court has reviewed all of the cases cited by the parties, and has analyzed those relevant to Petitioner's due process claim.[12]  In *State v. Thiele*, the victim met defendant for the first time at a Wal-Mart store.  935 S.W.2d 726, 727 (Mo. Ct. App. 1997).  Through a series of circumstances, she had been led to believe that defendant worked at a company that hired shoe models to participate in trade shows. The victim and defendant were sitting in the victim's car, ostensibly waiting for the victim's original contact at the company to arrive.  The defendant informed the victim that the victim's contact had set them up together so that he could have shoe fantasies, and, at that time instructed the victim to start the car and drive.  *Id.* at 727-28.  Because the defendant had his hand in his pocket, the victim believed he may have had a gun.  *Id*. at 728.  After pulling into a church parking lot, the victim tried on shoes while the defendant masturbated.  *Id.*  The defendant became "excited" and "**grabbed the victims arm and, squeezing it hard, pulled her hand toward his penis, saying, 'I want you to touch me.**'** (emphasis supplied). The victim jerked her arm away exclaiming, 'I can't do that.'" *Id*.  The defendant acquiesced and continued masturbating.  *Id*.  The defendant was convicted of **attempted** forcible sodomy.  On appeal, the defendant argued that he did not exercise any force against the victim.  *Id*. at 729.  The court disagreed, finding that "defendant physically reached out, and with force calculated to overcome her resistence, attempted to make victim touch him.

The Missouri Supreme Court cited R_ D_ G_, 773 S.W. 2d 726 (Mo. Ct. App. 1987) for the proposition that "the law does not require or expect utmost resistance to a sexual assault when it appears that resistance would be futile or would provoke a more serious injury."

---

[12]Many of the cases cited by the parties have been already thoroughly discussed *infra*.

*Niederstadt*, 66 S.W.3d at 15. While that is a well recognized legal principle, not disputed by Petitioner, the facts of that case clearly demonstrate that some amount of physical force, apart from the sex act itself, is required for the element of forcible compulsion to be present. In that case, the defendant assigned as error "that there was no substantial evidence to support a finding of 'forcible compulsion,'" *Id.* at 827. E., a seventeen-year-old step-daughter of the defendant had been raped in the family home while her mother was in the hospital, when the "defendant seized her and forced her into his bedroom against her will. The defendant removed E.'s night clothes, 'started fondling [her] breasts and kissing [her]' and finally inserted his penis into her vagina. E. tried to pull away and told the defendant to leave her alone, but the defendant 'had a grip' on E. and refused to release her. When she was asked if she screamed, E. testified she did not do so because '[i]t wouldn't have done any good.'" *Id.* at 826. The defendant forced her to have intercourse in the home the next night. A few days later, E. drove a pickup truck into a field to practice driving. Defendant went along as a passenger. He told her to stop. The defendant forced her to lie down on the seat and again had sexual intercourse with her. The facts supporting the sodomy conviction occurred on the same occasion, when "defendant pulled the prosecutrix out of the truck, laid her over the seat with her feet on the ground and inserted his penis into E.'s anus. E. attempted to stop the defendant but was unable to do so." *Id.* at 826. When she was sodomized, E. testified the defendant "was holding her arms tight" most of the time. It is very apparent that in this case, like all others preceding Petitioner's case heard by Missouri Supreme Court, there was physical force independent of the sex acts to support the charge of forcible compulsion, which is absent in Petitioner's case. *See State v. Hannett,* 713 S.W. 2d 267 (Mo. Ct. App. 1986) (defendant's conviction for forcible sodomy upheld after an assignment of error for insufficiency of the evidence where he sodomized former wife after exhibiting a pistol and repeatedly threatening her with death); *State v. Brummell,* 731 S.W. 2d 354 (Mo. Ct. App. 1987) (insufficiency of evidence assignment rejected and forcible compulsion proved where victim

awoke at approximately 3:00 a.m. to discover defendant lying on top of her grabbing her hand putting it on his penis; victim pushed him away and he again grabbed her hand and tried to place it on his penis and victim again resisted by pushing him away and escaped); *State of Missouri v. Nixon,* 858 S.W. 2d 782, 784-85 (Mo. Ct. App. 1993) (after being convicted of forcible sodomy of two females, defendant's challenge to the sufficiency of the evidence was rejected where he "elbowed K.S. against the window with his left arm[,]...opened the front passenger door and grabbed K.P.[,]...put [K.P.] in a headlock, threatened to kill her and ordered K.S. to come around to him[,]...grabbed her by the hair, pushed her to the ground , and directed her head toward his penis to orally stimulate him...he reached for K.P.'s hair and pulled her out of the car[,] ...shoved K.S's front against the car and raped her[,]...pushed both women toward the trunk of the car, and anally sodomized K.S. twice."); and *State v. Koonce,* 731 S.W. 2d 431, 435 (Mo. Ct. App. 1987) (evidence was sufficient where defendant was convicted of forcible sodomy and other offenses, he started to touch the victim in his house when she told him to stop, "picked me up off the stool like and pushed me over to the bed...[t]hen smashed my face down to the bed, ...I tried to run and he caught me and said if I did it again, that he was going to try to put me to sleep.").  The Court has found no prior judicial interpretation of the sodomy statute which did not require a showing of physical force by the perpetrator, in addition to acts required to complete or attempt to complete the sex act itself, and no case was found where the "totality of the circumstances" was relied upon to supply the acts to complete or attempt to complete the sex act where no other physical force appeared in the record, to support the required element of "by forcible compulsion" in a sodomy prosecution.  Thus, the Missouri Supreme Court's judicial modification of the Sodomy statute expanded the coverage of the statute to such a degree that the court's interpretation violated Petitioner's due process rights.

## VI. CONCLUSION

When Petitioner was tried for the offense of forcible sodomy, he had a right to expect that he would be found innocent if the prosecuting attorney was unable to present evidence that he had deviate sexual intercourse with S.C. by forcible compulsion. He knew the facts of the case before he was tried. If he suspected that he could be convicted of forcible sodomy under the facts as he knew them to exist, he may have pursued a plea bargain under a statute that included the elements of an offense that he knew he had committed that carried a lesser sentence; try to bargain for a more favorable sentence closer to the five year minimum sentence; or stand trial, knowing that under the facts of his case he could prevail on appeal if convicted. The Court finds that the Missouri Supreme Court changed the law, that the change was not foreseeable, and the new law was retroactively applied to his case, and in doing so, Petitioner was deprived of due process of law under the Fourteenth Amendment to the United States' Constitution. This deprivation of due process "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254. Therefore, Petitioner's prayer for relief must be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's § 2254 Motion [doc. #1] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Judgment and Sentence in State of Missouri v. James R. Niederstadt, Cause No. CR398-26F is **VACATED**.

**IT IS FURTHER ORDERED** that a **WRIT OF HABEAS CORPUS** will accompany this order.

Dated this 27th day of September, 2005.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

24